**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **JORGE GEOVANY HERNANDEZ,** | § | |
| **#2133846** | § | |
| | § | **CIVIL ACTION NO.  4:19cv713** |
| **VS.** | § | |
| | § | |
| **DIRECTOR, TDCJ-CID** | § | |

<u>**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**</u>

*Pro Se* Petitioner Jorge Geovany Hernandez, an inmate confined in the Texas prison system, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred to United States Magistrate Judge Kimberly C. Priest Johnson for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636, and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge.

## I.  PROCEDURAL BACKGROUND

Petitioner is challenging his Grayson County conviction. A jury found Petitioner guilty of continuous sexual assault of a child under fourteen years of age, and the trial court sentenced him to life imprisonment, Cause No. 066771. (Dkt. #7-2, pp. 107-10).

Petitioner appealed his conviction, which was affirmed on May 22, 2018. *Hernandez v. State*, No. 05-17-00560-CR, 2018 WL 2316026 (Tex. App. May 22, 2018) (Dkt. #9-2). Petitioner filed a petition for discretionary review ("PDR") (Dkt. #8-10), which the Texas Court of Criminal Appeals ("TCCA") refused on November 7, 2018. (Dkt. #7-1).

Petitioner filed an application for state habeas corpus relief on June 20, 2019. (Dkt. #9-10, pp. 31-45; Dkt. #9-11, pp. 1-2). The state habeas court entered findings of fact and conclusions of

law and ordered that Petitioner's application be denied. (Dkt. #9-11, pp. 28-41). On September 18, 2019, the TCCA denied the application without a written order. (Dkt. #9-7).

Petitioner filed the instant petition on or about September 30, 2019. (Dkt. #1). Petitioner asserts the following claims for relief:

1. Appellate counsel rendered ineffective assistance by failing to ensure that the *voir dire* transcript was part of the record on appeal;

2. Trial counsel rendered ineffective assistance by failing to conduct an independent investigation of the medical evidence and to file a motion to appoint a medical expert to rebut the State's evidence and the testimony of the SANE nurse;

3. The trial court provided a jury charge that allowed him to be convicted on less than a unanimous verdict; and

4. Trial counsel rendered ineffective assistance by failing to object to the jury charge, which allowed the jury to find him guilty of continuous sexual abuse on less than a unanimous verdict.

(Dkt. #1, pp. 6-7). The Director filed a response, arguing that Petitioner's claims are without merit.

(Dkt. #10). Petitioner did not file a reply.

## II.  FACTUAL BACKGROUND

The Fifth District Court of Appeals set out the facts as follows:

In 2011, C.G.R. and C.N.W. moved to Texas with their mother and older brother. Their mother met Hernandez at work that same year and they started dating about six months later. Although their mother had introduced Hernandez to her children, she did not allow him to be alone with them until they had dated about a year, when she had to work "the graveyard shift" and needed someone to watch her children during the night. At some point, Hernandez started living with them. During this time, the family lived in a house the girls called the "mouse house," but they lived there for only two months before it was destroyed by fire. According to C.G.R., Hernandez began sexually abusing her when they lived in "the mouse house" and her mother was asleep or at work.

After the fire, the family moved to another house that the girls called "the pool house." They lived there for a year. Next, the family moved to a residence the girls called "the Christmas tree house." The last incident occurred on December 29, 2015, when the family lived at "the Christmas tree house." During that incident,

Hernandez tried to force C.G.R. to touch his penis, C.G.R. called for C.N.W.'s help, and the girls tried to push Hernandez away. Later that night, C.N.W. told her mother that she "ha[d] something to tell [her], but would tell her in the morning."

On December 30, 2015, the next morning, while her mother was cooking breakfast, C.N.W. approached her mother and told her that Hernandez "pulls his thing out and tried [sic] to make them touch it," rubbing her hands together to demonstrate. The mother called C.G.R. into the room and asked if what her younger sister said was true. C.G.R. said, "Yes," then sat on the floor appearing to "shut down." At that point, their mother called the police.

After the police arrived, the girls' mother took them to the Child Advocacy Center where they were interviewed by Britney Martin, a forensic interviewer. Martin interviewed C.N.W. first. During the interview, C.N.W. told Martin that one night, she had a nightmare and got into bed with her mother and Hernandez. After her mother left for work, Hernandez pulled her closer, she tried to get away, but he was too strong, and "he puts his no-no spot in her butt." C.N.W. told Martin it happened a lot of times, at multiple places, she was eight years of age when it happened, "it hurt like a rock," and when she wiped her bottom afterward there was white and brown "gooey stuff" on the tissue. Also, she told Martin that Hernandez rubs her tummy a lot and goes down too far, which Martin understood to mean he touched her genitals. In addition, C.N.W. stated that she saw Hernandez's "no-no" spot on multiple occasions. C.N.W. clearly told Martin that Hernandez had instructed her not to tell. Next, Martin interviewed C.G.R. During that interview, C.G.R. told Martin that Hernandez "tries to do the nasty" with her, said "the nasty" was his bad spot and her bad spot together, "rubb[ed] her face and stomach putting his bad spot to her bad spot," had "white gooey stuff" coming out of his "bad spot," and caused her hand to touch his genitals. Martin understood C.G.R. to be describing events that occurred over a period of time.

Also, on December 30, 2018, C.G.R. and C.N.W. were examined by Judith Common, a registered nurse and sexual assault nurse examiner (SANE). C.N.W. told Common that Hernandez "has been doing nasty on [her] pee pee and [her] bottom (where poop comes from). He tries to let us touch him where his pee pee spot is." C.G.R. told Common that, the night before, Hernandez grabbed her and tried to pull out his "bad spot," she told him "no" two or three times, he touched his "no-no" on her stomach, she called her sister for help, Hernandez did "the nasty" before, and the first time he did it she was seven years of age and in the second grade. Common did not observe any trauma or abnormalities to the girls' genital or anal areas, but stated that this is not uncommon as those areas heal quickly.

In addition, on December 30, 2015, Hernandez was arrested. Before he was interviewed, Officer Jose Cuellar read him the *Miranda* warnings in Spanish. Detective John Watt interviewed Hernandez with Officer Cuellar interpreting. During the interview, Hernandez initially denied any inappropriate conduct and, at times, accused the children of lying. However, during the course of the interview,

he first admitted to inappropriate conduct with C.G.R. and then, eventually, he also admitted to inappropriate conduct with C.N.W. With respect to C.G.R., Hernandez compared her to a woman, claimed that "she was always trying to find a way to touch and seduce [him]," admitted that C.G.R. had touched his penis about three times and that he penetrated her vagina with his hands, confirmed the grabbing incident where C.N.W. tried to help C.G.R. push him away on December 29, 2015, stated he touched her like you would touch a woman, corroborated that he masturbated and ejaculated in front of her, and related that he touched her private part about ten times, the first time being about a year ago. With respect to C.N.W., Hernandez admitted that one time he grabbed her from behind like a man would grab a woman, "[he] stuck [his penis] inside [her butt]," and "she said it was hurting." Also, Hernandez indicated to Detective Watt that he "wanted help for this."

Hernandez was indicted for continuous sexual abuse of a young child or children. Before trial, Hernandez filed a motion to suppress his oral confession to the police, arguing his statement was involuntary. The trial court denied the motion to suppress and signed written findings of fact and conclusions of law. The jury found Hernandez guilty and the trial court assessed his punishment at life imprisonment.

*Hernandez*, No. 05-17-00560-CR, 2018 WL 2316026, at **1-2.

### III.  STANDARD FOR FEDERAL HABEAS CORPUS RELIEF

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993); *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The

new provisions of § 2254(d) provide that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) was contrary to federal law then clearly established in the holdings of the Supreme Court; (2) involved an unreasonable application of clearly established Supreme Court precedent; or (3) was based on an unreasonable determination of the facts in light of the record before the state court. *See Harrington v. Richter*, 562 U.S. 86, 97-98 (2011). Furthermore, a state court's factual findings are entitled to deference and are presumed correct unless the petitioner rebuts those findings with clear and convincing evidence. *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010); *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006); *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001); *see also Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002) (the statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts). This deference extends not only to express findings of fact, but also to any implicit findings of the state court. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005)).

"In Texas writ jurisprudence, usually a denial of relief rather than a "dismissal" of the claim by the Court of Criminal Appeals disposes of the merits of a claim." *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Henderson v. Cockrell,* 333 F.3d 592, 598 (5th Cir. 2003*)*; *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Similarly, the presumption that a claim was adjudicated on the merits extends to the TCCA's summary refusal of a PDR. *See Dorsey v. Stephens*, 720 F.3d 309, 315-16 (5th Cir. 2013); *Singleton*, 178 F.3d at 384; *Guerra v. Dir., TDCJ-CID*, No. 4:18CV782, 2022 WL 247836, at *8 (E.D. Tex. Jan. 4, 2022), *report and recommendation adopted*, No. 4:18CV782, 2022 WL 243708

(E.D. Tex. Jan. 25, 2022); *Adams v. Dir., TDCJ-CID*, No. 6:14CV280, 2017 WL 4334249, at \*16 (E.D. Tex. Aug. 4, 2017), *report and recommendation adopted*, No. 6:14CV280, 2017 WL 4270198 (E.D. Tex. Sept. 25, 2017); *Miles v. Dir., TDCJ-CID*, No. 2:10CV236, 2012 WL 5392064, at \*2 (E.D. Tex. Sept. 14, 2012), *report and recommendation adopted*, No. 2:10CV236, 2012 WL 5399860 (E.D. Tex. Nov. 5, 2012); *Narramore v. Dir., TDCJ-CID*, No. 2:09CV63, 2012 WL 1034020, at \*6 (E.D. Tex. Feb. 8, 2012), *report and recommendation adopted*, No. 2:09CV63, 2012 WL 1032427 (E.D. Tex. Mar. 27, 2012).

Additionally, federal habeas relief is foreclosed if a claim: (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Wesbrook v. Thaler*, 585 F.3d 245, 255 (5th Cir. 2009).

Thus, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

## IV.  ANALYSIS

### A.  <u>Erroneous Jury Charge (Claim Three)</u>

Petitioner contends that the trial court provided a charge that allowed him to be convicted on less than a unanimous verdict in violation of his constitutional rights. (Dkt. #1, p. 7).

Specifically, Petitioner argues that the jury charge did not require jurors to unanimously agree on which predicate offenses he committed or the time periods he committed them. (Dkt. #1, p. 7).

The jury charge of continuous sexual abuse of a young child stated, in relevant part:

1.

A person commits an offense if, during a period that is 30 days or more in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims, and, at the time of the commission of each of the acts of sexual abuse, the person was 17 years of age or older and the victim is a child younger than 14 years of age.

. . . .

3.

You are instructed that members of the jury are not required to agree unanimously on which specific acts of sexual abuse, if any, were committed by the defendant or the exact date when those acts were committed, if any. The jury must agree unanimously that the defendant, during a period that was 30 or more days in duration, committed two or more acts of sexual abuse as that term has been previously defined.

You are further instructed that while the indictment alleges that the offense was committed on December 29th, 2013 through December 29th, 2015, the State is not required to prove the exact date alleged in the indictment, but may prove the offense, if any, to have been committed at any time prior to the presentment of the indictment on March 24th, 2016.

4.

Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that the defendant, JORGE HERNANDEZ, in Grayson County, Texas, did then and there, during a period that was 30 or more days in duration, to wit: from on or about December 29th, 2013 through December 29th, 2015, commit two or more acts of sexual abuse against a child younger than 14 years of age, namely C.G.R. and/or C.N.W., to wit: the defendant, with the intent to arouse or gratify the sexual desire of the defendant or C.G.R., engaged in sexual contact with C.G.R., by touching the genitals of C.G.R.; the defendant intentionally or knowingly caused the penetration of the sexual organ of C.G.R. with the defendant's finger and/or sexual organ; the defendant intentionally or knowingly caused the anus of C.N.W. to contact the sexual organ of the defendant; and/or the defendant intentionally or knowingly caused the penetration of the anus of C.N.W.

with the defendant's sexual organ, then you will find the defendant guilty of Continuous Sexual Abuse of a Young Child as charged in the indictment.

. . . .

After you have retired to your jury room, you should elect one of your members as your presiding juror. It is that person's duty to preside at your deliberations, to vote with you, and, when you have unanimously agreed upon a verdict, to certify your verdict by signing the same as presiding juror.

(Dkt. #7-2, pp. 88, 90, 96). Following the application paragraph on the charged offense, there were three alternative lesser-included offenses for aggravated sexual assault of a child. *Hernandez*, No. 05-17-00560-CR, 2018 WL 2316026, at *6. The State did not object to the charge, and Petitioner's trial counsel made "a general objection for record purposes as to the unanimity issue, if in fact, the lesser-includeds [sic] are reached, but that's it." *Id.*

On direct appeal, Petitioner argued that the jury instruction was defective because it allowed the jury to convict him without reaching a unanimous verdict. The Fifth District Court of Appeals addressed the issue as follows:

### III. JURY CHARGE

In issue two, Hernandez argues he suffered egregious harm when the trial court included an instruction in the jury charge that allowed the jurors to convict him without reaching a unanimous decision. He contends the jury charge was defective because it did not require the jury to agree on the specific acts of sexual abuse and the trial court did not require the State to choose what it considered to be the strongest theory of liability. However, he acknowledges that his contention there was jury charge error was not preserved for appellate review. Nevertheless, Hernandez claims that he was egregiously harmed by the allegedly erroneous jury charge because: (1) the entire jury charge was tainted by the error; (2) there was a lack of evidence showing acts of abuse occurred during a period of thirty or more days; and (3) the State sought to prove the abuse occurred over a fifteen month period because the girls said the abuse occurred at three different houses. The State responds that the jurors were not required to unanimously agree on the specific acts of sexual abuse committed. Assuming, without deciding, there was jury charge error, we review the alleged error for egregious harm.

### *A. Egregious Harm*

Article 36.19 of the Texas Code of Criminal Procedure establishes the standard for reversal on appeal when the requirements of article 36.14, which relates to the charge of the court, have been disregarded: "the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of [the] defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." CRIM. PROC. art. 36.19 (West 2006). If the defendant timely objected to the jury instruction, then reversal is required if the appellate court concludes there was some "some harm" to the defendant. *See Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). When the defendant fails to object or states that he has no objection to the jury charge, an appellate court will not reverse for jury charge error unless the record shows "egregious harm" to the defendant. *See Marshall*, 479 S.W.3d at 843; *Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005).

Egregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis. *See Marshall*, 479 S.W.3d at 843; *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011). Neither party bears the burden on appeal to show harm or lack thereof under the egregious harm standard. *See Marshall*, 479 S.W.3d at 843 (citing *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). Instead, courts are required to examine the relevant portions of the entire record to determine whether the defendant suffered actual harm, as opposed to theoretical harm, as a result of the error. *See Marshall*, 479 S.W.3d at 843. The actual degree of harm must be assayed in light of: (1) the entire jury charge; (2) the state of the evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *See Marshall*, 479 S.W.3d at 843; *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); *Almanza*, 686 S.W.2d at 171. Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive. *See, e.g.*, *See Marshall*, 479 S.W.3d at 843; *Taylor*, 332 S.W.3d at 490.

### B. Application of the Law to the Facts

First, we review the entire jury charge. As previously stated, section 21.02(b) of the Texas Penal Code states:

> (b) A person commits an offense if:

> (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of abuse are committed against one or more victims; and

> (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age at the time of the offense.

PENAL § 21.02(b).

The definition portion of the jury charge states, in part:

> A person commits an [o]ffense if, during a period that is 30 days or more in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims, and, at the time of the commission of each of the acts of sexual abuse, the person was 17 years of age or older and the victim is a child younger than 14 years of age.

The charge included definitions for an "act of sexual abuse," "indecency with a child," and "aggravated sexual assault." With respect to the jury's need to decide unanimously, the charge stated:

> You are instructed that members of the jury are not required to agree unanimously on which specific acts of sexual abuse, if any, were committed by the defendant or the exact date when those acts were committed, if any. The jury must agree unanimously that the defendant, during a period that was 30 or more days in duration, committed two or more acts of sexual abuse as that term has been previously defined.

The application paragraphs of the jury charge stated, in part, the following with respect to the offense of continuous sexual abuse of a child or children:

> Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that the defendant, JORGE HERNANDEZ, in Grayson County, Texas, did then and there, during a period that was 30 or more days in duration, to wit: from on or about December 29th, 2013 through December 29th, 2015, commit two or more acts of sexual abuse against a child younger than 14 years of age, namely C.G.R. **and/or** C.N.W., to wit: the defendant, with the intent to arouse or gratify the sexual desire of the defendant or C.G.R., engaged in sexual contact with C.G.R., by touching the genitals of C.G.R.; the defendant intentionally or knowingly caused the penetration of the sexual organ of C.G.R. with the defendant's finger **and/or** sexual organ; the defendant intentionally or knowingly caused the anus of C.N.W. to contact the sexual organ of the defendant; **and/or** the defendant intentionally or knowingly caused the penetration of the anus of C.N.W. with the defendant's sexual organ, then you will find the defendant guilty of

Continuous Sexual Abuse of a Young Child as charged in the
indictment.

(Emphasis added). Following the application paragraph on the charged offense,
there were three alternative lesser-included offenses for aggravated sexual assault
of a child. The State did not object to the charge and Hernandez made "a general
objection for record purposes as to the unanimity issue, if in fact, the lesser-
includeds [sic] are reached, but that's it."

Hernandez argues the use of "and/or" in the application paragraph "no doubt"
caused the jury confusion and "there is no assurance that any juror correctly
understood what the State was required to prove, as the elements of the offense
were hopelessly jumbled." He also claims the State should have been required to
choose its strongest theory of liability. Although the application paragraph did use
"and/or," the statute for the offense required the jury to find Hernandez committed
two or more acts of sexual abuse, regardless of whether the acts of abuse were
committed against one or more victims. *See* PENAL § 21.02(b). Section 21.02(c)
specifically enumerates the acts of sexual abuse. *See Price v. State*, 434 S.W.3d
601, 606 (Tex. Crim. App. 2014). Indecency with a child under section 21.11(a)(1)
and aggravated sexual assault under section 22.021 are two of the specifically
enumerated predicate "acts of sexual abuse" for the offense of continuous sexual
abuse. *See* PENAL § 21.02(c)(2)-(3).

Second, we review the state of the evidence. We have already examined the
evidence admitted for the jury's consideration when we reviewed the sufficiency
of the evidence and concluded that the evidence was sufficient.

Third, we review the argument of counsel. With respect to the unanimity of the
jury, the State argued during closing:

> Unanimity of the jury on particular acts. On Page 3 of the Jury
> Charge that y'all were read, you are instructed that members of the
> jury are not required to agree unanimously on which specific act of
> sexual abuse, if any, were committed by the defendant, or the exact
> dates when those were committed. You just must agree unanimously
> that the defendant, during a period that was 30 more days in
> duration, committed two or more acts as previously defined.

> Now, what that means, folks, practically speaking, for the same [sic]
> of argument let's say you six gentleman believe that the defendant
> penetrated the anus of [C.N.W.], but you don't believe he penetrated
> the sexual organ of [C.G.R.] with his penis. You think you believe
> his confession. You say, ["No"], I think he penetrated the sexual
> organ of [C.G.R.] multiple times with his finger. Let's say you guys
> don't believe the defendant penetrated the anus of [C.N.W.] with his
> sexual organ, but you do believe that over the course of a year he

penetrated [C.G.R.]'s sexual organ with his penis on multiple occasions. You see what I'm saying? You guys are all in agreement and you should find him guilty because you don't have to all agree on which particular act. All you have to agree on is that two or more acts occurred 30 days apart.

So, don't get caught up if some of you don't believe one didn't happen or one did. Figure out which ones you believe, and if each and every one of you can say, well, I believe at least two occurred 30 days or more apart over the course of the time that's alleged in the indictment, then you guys are unanimous. Go ahead and come back with a guilty verdict.

Defense counsel's argument did not address unanimity as to the specific acts of sexual abuse, but focused on whether the evidence showed the acts occurred thirty or more days apart. Further, the statute does not require that the jury agree unanimously on the specific acts of sexual abuse the defendant committed or the exact dates when those acts were committed. *See* PENAL § 21.02(d).

Having reviewed the entire record, we conclude that assuming, without deciding, there was jury charge error, Hernandez did not suffer egregious harm.

Issue two is decided against Hernandez.

*Hernandez*, No. 05-17-00560-CR, 2018 WL 2316026, at **4-7. Petitioner raised this issue in his PDR, which the TCCA refused. The refusal constitutes an adjudication on the merits. *See Dorsey*, 720 F.3d at 315-16; *Singleton*, 178 F.3d at 384. *see also Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

Improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief. *See Estelle*, 502 U.S. at 71-72. The relevant inquiry on claims of improper jury instructions by a state court is not whether there was prejudice to the petitioner or whether state law was violated, but whether there was prejudice of constitutional magnitude. *See Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002). The relevant inquiry is whether "the ailing instruction

by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). Moreover, there is a strong presumption that errors in jury instructions are subject to harmless-error analysis. *Galvan*, 293 F.3d at 765. Thus, even if the instruction was erroneous, if the error is harmless, habeas corpus relief is not warranted. *Id.* (citing *Brecht*, 507 U.S. at 623-24). In a habeas proceeding, a constitutional error is not harmless if it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623 (internal quotation marks and citation omitted); *see also Galvan*, 293 F.3d at 765.

The Sixth Amendment to the Constitution guarantees that a federal or state criminal jury cannot convict unless it unanimously finds that the prosecution has proved each element of the charged offense. *Ramos v. Louisiana*, ___ U.S. ___, 140 S. Ct. 1390, 1395-97 (2020); *Richardson v. United States*, 526 U.S. 813, 817 (1999). A disagreement about "which of several possible sets of underlying brute facts make up a particular element"—in other words, "which of several possible means the defendant used to commit an element of a crime"—does "not matter as long as all 12 jurors unanimously conclude[] that the Government ha[s] prove[d] the necessary related element." *Richardson*, 526 U.S. at 817; *see also Anderson v. Davis*, No. 3:19-CV-2915-C-BK, 2021 WL 3040771, at *7 (N.D. Tex. May 13, 2021), *report and recommendation adopted*, No. 3:19-CV-2915-C-BK, 2021 WL 3039015 (N.D. Tex. July 19, 2021).

To convict a defendant of the offense of continuous sexual abuse of a child, a jury must unanimously find beyond a reasonable doubt: (1) the defendant committed two or more acts of sexual abuse during a period of thirty or more days; and (2) at the time of each act of sexual abuse, the defendant was seventeen years of age or older and the victim was a child younger than fourteen years of age. Tex. Penal Code Ann. § 21.02(b); *see also Carmichael v. State*, 505 S.W.3d 95, 106 (Tex. App. 2016). The acts of sexual abuse listed in Texas's continuous-sexual-abuse statute "are

not elements of the offense; instead, the element of the offense on which jury unanimity is required is the 'commission of two or more acts of sexual abuse over a specific time period—that is, the pattern of behavior or the series of acts[.]'" *Harrison v. State*, No. 06-21-00031-CR, 2021 WL 5828678, at *8 (Tex. App. Dec. 9, 2021, pet ref'd); *Holton v. State*, 487 S.W.3d 600, 606 (Tex. App. 2015, no pet.); *Pollock v. State*, 405 S.W.3d 396, 405 (Tex. App. 2013, no pet.); *Casey v. State*, 349 S.W.3d 825, 829 (Tex. App.  2011, pet. ref'd) (continuous sexual abuse statute criminalizes the series of acts, rather than individual acts themselves, the series being key element of offense). "The 'series' itself is the key 'element' of the offense on which jury unanimity is required; the individual acts of sexual abuse enumerated in the statute are simply the 'manner and means' by which the series is committed." *Holton*, 487 S.W.3d at 606-07. The "jury need not even be unanimous with respect to which predicate offenses were committed, or when they were committed; they need only agree that at least two such offenses were committed over a greater-than-thirty-day period." *Ramos v. State*, 636 S.W.3d 646, 656-57 (Tex. Crim. App. 2021), *reh'g denied* (Jan. 26, 2022).

The trial court's jury charge tracked the language of Texas's continuous-sexual-abuse statute, Tex. Penal Code Ann. § 21.02(b), and required the jury to agree unanimously to the elements of the offense: that Petitioner committed at least two acts of sexual abuse against a child younger than fourteen years of age during a period of at least thirty days' duration. Also tracking the language of Texas's continuous-sexual-abuse statute, Tex. Penal Code Ann. § 21.02(d), the instructions stated that the jury was not required to agree unanimously on which specific acts of sexual abuse were committed by Petitioner or the exact dates when those acts were committed.

Petitioner's contentions regarding the jury charge in this case lack merit, as the jury charge correctly instructed the jury on the crime of continuous sexual abuse of a child, largely tracked the

language of the indictment and the continuous sexual abuse statute, advised the jury of the relevant offense dates, and required unanimity as to the elements of the crime as required by the Sixth Amendment to the Constitution. *See Ramos*, ___ U.S. at ___, 140 S. Ct. at 1395-97; *Schermerhorn v. Davis*, No. 18-11136, 2019 WL 11788789, at *2 (5th Cir. June 19, 2019); *see also Reed v. Quarterman*, 504 F.3d 465, 479, 482 (5th Cir. 2007) (rejecting a challenge to a Texas capital murder jury charge that allowed for conviction without jury agreement about whether the killing occurred during a robbery or rape/attempted rape); *Hoover v. Johnson*, 193 F.3d 366, 369-71 (5th Cir. 1999) (concluding there was no federal right that a jury must agree on a specific overt act for a state conspiracy conviction, even to the extent that Texas courts had created such a right under state law). Furthermore, Petitioner presents no persuasive argument that, even if the jury instructions were wrong, the instructions had a substantial and injurious effect or influence on the jury's verdict. *See Schermerhorn v. Davis*, No. 4:17-CV-559-Y, 2018 WL 3956200, at *4 (N.D. Tex. Aug. 17, 2018). Notably, the Fifth District Court of Appeals concluded that the evidence was sufficient to support Petitioner's conviction, *Hernandez*, No. 05-17-00560-CR, 2018 WL 2316026, at **2-4, and Petitioner does not challenge this finding.

Petitioner fails to show that the state court adjudication of his jury charge claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the state court adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, Petitioner's Claim Three should be denied.

**B.     Ineffective Assistance of Counsel (Claim One, Claim Two, and Claim Four)**

Petitioner asserts several claims of ineffective assistance of counsel. A petitioner who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove

entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). Ineffective assistance of counsel claims are governed by the Supreme Court's standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* provides a two-pronged standard, and the petitioner bears the burden of proving both prongs. *Id.* at 687. Under the first prong, he must show that counsel's performance was deficient. *Id.* To establish deficient performance, he must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness examined under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. The *Strickland* court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . .

*Id.* at 689 (citations omitted). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted).

Under the second prong of the *Strickland* test, the petitioner must show that his attorney's deficient performance resulted in prejudice. *Id.* at 687. To satisfy the prejudice prong, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. An ineffective assistance of counsel claim fails if a petitioner cannot satisfy either the deficient performance or

prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either. *Id.* at 697.

Reviewing Petitioner's ineffective-assistance-of-counsel claim through the lens of AEDPA, however, means that he has a higher bar to exceed in order to prevail. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). Moreover, unreasonableness under *Strickland* and under § 2254(d) are not the same. First, "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* Second, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### 1.    Trial Counsel's Failure to Investigate and File a Motion to Appoint Medical Expert (Claim Two)

In Claim Two, Petitioner asserts that trial counsel rendered ineffective assistance by failing to conduct an independent investigation of the medical evidence and to file a motion to appoint a medical expert to rebut the State's evidence and the testimony of the SANE nurse. (Dkt. #1, p. 6). Petitioner alleges that had trial counsel hired a medical expert, the result of the proceedings would have been different. (Dkt. #1, p. 6).

Trial counsel has a duty to conduct a reasonable amount of pretrial investigation into the facts of a criminal case or to make a reasonable decision that makes particular investigations unnecessary. *Strickland*, 466 U.S. at 691. To establish that counsel was ineffective for a failure to investigate, the petitioner must do more than merely allege a failure to investigate; he must state

with specificity what the investigation would have revealed, what specific evidence would have been disclosed, and how the evidence would have altered the outcome of the trial. *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

Additionally, the hiring of expert witnesses and the presentation of their testimony is a matter of trial strategy. *Colburn v. Cockrell*, 37 F. App'x 90 (5th Cir. 2002). The Supreme Court has "often explained that strategic decisions—including whether to hire an expert—are entitled to a 'strong presumption' of reasonableness." *Dunn v. Reeves*, ___ U.S. ___, ___, 141 S. Ct. 2405, 2410 (2021) (quoting *Richter*, 562 U.S. at 104); *see also Strickland*, 466 U.S. at 691; *Bower v. Quarterman*, 497 F.3d 459, 470 (5th Cir. 2007). A petitioner's unsupported claims regarding an uncalled expert witness "are speculative and disfavored by this Court as grounds for demonstrating ineffective assistance of counsel." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002). To prevail on an ineffective assistance of trial counsel claim based on counsel's failure to consult with or call a witness, the petitioner must name the witness, demonstrate the witness was available to testify, delineate the content of the witness's proposed testimony, and show the testimony would have been favorable to the defense. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). The requirements of showing availability and willingness to testify "[are] not a matter of formalism." *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010). A petitioner must present evidence on these points as part of the burden of proving trial counsel could have found and presented witnesses, including expert witnesses. *Id.*

Petitioner's claim was fully developed during the state habeas corpus proceedings. In response to Petitioner's application for state habeas corpus relief, Petitioner's trial counsel submitted an affidavit, stating in relevant part:

In his second ground, the appellant alleges that we failed to perform our own investigation and obtain expert evidence to "prove" that the victims' "hymens were still intact and that there was not scarring on the anal walls."

. . . .

I spent considerable time discussing the case with co-counsel and the applicant— both in person and in writing. The applicant was given a copy of the indictment against him and indicated that he understood the charges against him. I requested and obtained the case reports, statements and other discovery material from the State.

The applicant and I went over the discovery provided by the State and discussed the facts of this case—including what the evidence would and would not prove. Throughout this process, I questioned the applicant in order to ascertain any additional facts not included in discovery, any inaccuracies in what the police reports contained and any possible avenue of mitigation or investigation that might be available.

. . . .

The applicant also now believes that we should have obtained an expert witness to "prove" that the lack of physical trauma found during the SANE exams meant that they had not been assaulted by the applicant. We discussed during our examination of the evidence in this case whether an expert would be beneficial. Based on my training and experience, I knew that the lack of scarring or trauma on either child was not dispositive of whether they had or had not been penetrated. As such, we made a strategic decision not to seek out an expert witness to challenge the SANE findings because we did not believe it would help the applicant and because an expert might very well bolster the SANE nurse's testimony.

(Dkt. #9-11, pp. 24-25).

The state habeas court issued the following findings with respect to Petitioner's claim:

15. The record reflects that the SANE nurse who examined C** did not [f]ind any evidence of tears, rips, or scarring to C**'s sexual organ or anus. (RR vol. 4, p. 155)

16. The nurse went on to explain that based on the child's medical history, she would not expect to see any injuries and the physical findings were not inconsistent with what C** had said happened. (RR vol. 4, pp. 155-156)

17. The SANE nurse also testified to her findings from the examination of G**, and once again stated that there were no physical trauma and that the lack of trauma was not inconsistent with what G** had said happened to her. (RR vol. 4, p. 157)

18. Jason Bowes [trial counsel] provided a credible affidavit.

19. Mr. Bowes states in part that he and co-counsel considered seeking an expert but, because there was no issue regarding the SANE findings, it did not seem necessary to do so. There were no physical findings of trauma on either child. The SANE nurse explained that this did not mean they had not been penetrated.

20. Based on his training and experience, Mr. Bowes states that no expert would be able to refute the SANE nurse's testimony.

(Dkt. #9-11, pp. 31-32).

The state habeas court cited the *Strickland* standard (Dkt. #9-11, pp. 35-36, ¶ 8), and "after considering the above findings of fact, the arguments of counsel and the law applicable to the facts," made the following conclusions of law (Dkt. #9-11, p. 34):

19. The applicant has failed to plead or prove by a preponderance of the evidence that the nurse was wrong or mistaken. As such, there was nothing for an expert witness to rebut and trial counsel were not ineffective for failing to hire an expert to testify about the children and their SANE examination results.

20. The applicant has failed to prove by a preponderance of the evidence that trial counsel failed to conduct his own investigation.

21. The applicant has also failed to prove by a preponderance of the evidence that trial counsel was deficient for not hiring an expert witness to testify that no sexual assault had occurred or that had an expert been hired, the results of the trial would have been different.

(Dkt. #9-11, pp. 38-39). The TCCA subsequently denied the application without written order.

In the present petition, Petitioner did not address the state court's findings. The claim must be rejected for the additional reason that Petitioner fails to overcome the "doubly" deferential standard that must be accorded to his trial attorney in light of both *Strickland* and § 2254(d). *See Richter*, 562 U.S. at 105. The record demonstrates that trial counsel adequately investigated the case and made the strategic decision not to retain a medical expert to rebut the SANE's nurse's testimony that there were no physical signs of trauma, which was not inconsistent with the victims'

allegations of sexual abuse. (Dkt. #8-3, pp. 144-145, 155-157). Trial counsel cross-examined the SANE nurse, who again indicated there were no physical signs of trauma. (Dkt. #8-3, pp. 158-63). Petitioner fails to identify an expert who was ready, willing, and able to provide favorable testimony on his behalf—that the absence of physical signs of abuse establishes that there was no abuse—or that the testimony would have altered the outcome of the trial. *See Day*, 566 F.3d at 538; *Anderson*, 18 F.3d at 1221. Thus, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the state court's application of *Strickland* was unreasonable or that its findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to relief on this ineffective assistance of trial counsel claim. Thus, Claim Two should be denied.

### 2.    Trial Counsel's Failure to Object to Jury Charge (Claim Four)

In Claim Four, Petitioner contends that trial counsel rendered ineffective assistance by failing to object to the jury charge, which allowed the jury to find him guilty of continuous sexual abuse on less than a unanimous verdict in violation of his constitutional rights. (Dkt. #1, p. 7).

The Court finds that Petitioner did not exhaust Claim Four and that it is procedurally barred. A prisoner must exhaust all remedies available in state court before proceeding in federal court unless circumstances exist that render the state corrective process ineffective to protect the prisoner's rights. 28 U.S.C. §§ 2254(b), (c). To exhaust properly, Petitioner must "fairly present" all his claims to the state court. *Picard v. Connor*, 404 U.S. 270, 275 (1971). This means that a petitioner must have informed the state court system of the same facts and legal theories upon which he bases his assertions in his federal habeas petition. *Id.* at 276-77; *Dispensa v. Lynaugh*,

847 F.2d 211, 217-18 (5th Cir. 1988). "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005) (internal quotation marks and citations omitted).

In Texas, all claims must be presented to and ruled on by the TCCA. *Richardson v. Procunier*, 762 F.2d 429, 430-31 (5th Cir. 1985); *Deters v. Collins*, 985 F.2d 789 (5th Cir. 1993). A Texas criminal defendant may exhaust remedies in two ways. A petitioner may file a direct appeal from a judgment of conviction followed, if necessary, by a petition for discretionary review in the TCCA. *See Hall v. Dir., TDCJ-CID*, No. 4:18CV721, 2021 WL 5926017, at *2 (E.D. Tex. June 23, 2021), *report and recommendation adopted*, No. 4:18CV721, 2021 WL 5919029 (E.D. Tex. Dec. 15, 2021); *Mitchell v. Lumpkin*, No. CV H-20-3619, 2020 WL 6504624, at *2 (S.D. Tex. Nov. 5, 2020). Alternatively, a petitioner may file an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure in the convicting court, which is transmitted to the TCCA once the trial court determines whether findings are necessary. *See* Tex. Code Crim. Proc. art. 11.07 § 3(c). "Habeas petitioners must exhaust state remedies by pursuing their claims through one complete cycle of either state direct appeal or post-conviction collateral proceedings." *Busby v. Dretke*, 359 F.3d 708, 723 (5th Cir. 2004).

A review of Petitioner's state proceedings reveals Petitioner did not fairly and properly present Claim Four to the highest state court in a procedurally correct manner. Petitioner failed to raise this claim on either direct appeal or in his state habeas application.[1] Therefore, the TCCA has

---

[1] As discussed above in Claim Three, Petitioner argued on direct appeal that he suffered egregious harm when the trial court included an instruction in the jury charge that allowed the jurors to convict him without reaching a unanimous decision. *Hernandez*, No. 05-17-00560-CR, 2018 WL 2316026, at *4. Claim Four, however, is an ineffective assistance of counsel claim, which is a separate and distinct claim for relief, reviewed under a different standard, than the claim raised on direct appeal. *See Shockley v. Dir., TDCJ-CID*, No. 4:17CV196, 2020 WL 1531273, at *5 (E.D. Tex. Feb. 28, 2020) ("A claim of ineffective assistance of counsel is reviewed under a different standard than claims of equal protection and/or due process."), *report and recommendation adopted*, No. 4:17CV196, 2020 WL 1511265 (E.D. Tex. Mar. 30, 2020), *certificate of appealability denied sub nom. Shockley v. Lumpkin*, No. 20-40305, 2021 WL 1589285 (5th Cir. Mar. 25, 2021), *cert. denied*, 142 S. Ct. 781, 211 L. Ed. 2d 488 (2022).

not had an opportunity to review Petitioner's claim. Accordingly, Petitioner's Claim Four is unexhausted.

If a petitioner has failed to exhaust state court remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, the claims are procedurally defaulted for purposes of federal habeas review. *Coleman*, 501 U.S. at 735, n.1; *see also Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997). If Petitioner presented Claim Four at this time to the TCCA in another state writ application, the court would find it to be procedurally barred under the Texas abuse of the writ doctrine. *See* Tex. Code Crim. Proc. Ann. art. 11.07 § 4; *Ex parte Whiteside*, 12 S.W.3d 819, 821 (Tex. Crim. App. 2000). Thus, this claim is barred from federal habeas review under the federal procedural default doctrine. *See Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (the Texas abuse of the writ doctrine is an "independent and adequate" state procedural bar for purposes of federal habeas review); *see also Moore v. Quarterman*, 534 F.3d 454, 463 (5th Cir. 2008) ("Texas's abuse of the writ doctrine is a valid state procedural bar foreclosing federal habeas review.") (quoting *Coleman v. Quaterman*, 456 F.3d 537, 542 (5th Cir. 2006), *cert. denied*, 549 U.S. 1343 (2007)).

Alternatively, the Court finds that even if not barred, Claim Four lacks merit. Texas state courts have held that section 21.02 of the Texas Penal Code does not violate a defendant's right to jury unanimity. *See Fulmer v. Texas*, 401 S.W.3d 305, 311-12 (Tex. App. 2013); *Kennedy v. State*, 385 S.W.3d 729, 731-32 (Tex. App. 2012); *Render v. State*, 316 S.W.3d 846, 857-58 (Tex. App. 2010). Texas courts have held that the individual acts of sexual abuse relate to the manner and means of committing the crime and are not elements of the offense. *Holton*, 487 S.W.3d at 606-07; *Fulmer*, 401 S.W.3d at 312. While jurors must unanimously agree on each element of the crime

in order to convict, they need not agree on all the underlying facts that make up a particular element. *Ngo v. States*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005). When alternative manners and means of committing a crime are submitted to a jury, it is appropriate for the jury to return a general verdict of guilty if the evidence supports a conviction under any one of them. *Kitchens v. State*, 823 S.W.3d 256, 258 (Tex. Crim. App. 1991).

Based on the authorities cited above, the Texas state courts do not consider section 21.02 unconstitutional based on the unanimity argument asserted by Petitioner. As a result, the trial court would have rejected any challenge to the jury charge, which tracked the language of section 21.02. Furthermore, the Fifth District Court of Appeals reviewed the jury charge on appeal and concluded that, even if erroneous, Petitioner did not suffer egregious or actual harm. *Hernandez*, No. 05-17-00560-CR, 2018 WL 2316026, at **4-7. Therefore, trial counsel's failure to challenge the jury charge based on unanimity did not fall below an object standard of reasonableness and did not cause Petitioner to suffer prejudice. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."). Accordingly, Claim Four should be denied.

### 3.    Ineffective Assistance of Appellate Counsel (Claim One)

In Claim One, Petitioner asserts that appellate counsel rendered ineffective assistance by failing to ensure that the *voir dire* transcript was part of the record on appeal. (Dkt. #1, p. 6). Petitioner seems to argue that had appellate counsel requested "a complete and full record," counsel would have discovered that the *voir dire* transcript showed that two women were empaneled who indicated that they could not be fair and impartial due to the nature of the charges, and that counsel then would have raised this issue on appeal. (Dkt. #1, p. 6).

24

A criminal defendant is constitutionally entitled to effective assistance of appellate counsel when he has a right to appeal under state law. *Evitts v. Lucey*, 469 U.S. 387, 393 (1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). The standard set out in *Strickland* to prove that counsel rendered unconstitutionally ineffective assistance applies to both trial and appellate attorneys. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey*, 720 F.3d at 319. Thus, to obtain relief, a petitioner claiming ineffective assistance of appellate counsel must show deficient performance and prejudice. *Smith*, 528 U.S. at 285. To establish that appellate counsel's performance was deficient, the petitioner must show that counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover non-frivolous issues and raise them. *Id.* The petitioner must also establish prejudice by demonstrating a "reasonable probability" that, but for counsel's deficient performance, "he would have prevailed on his appeal." *Id.* As the Fifth Circuit Court of Appeals explained:

> Appellate counsel is not required to "raise every nonfrivolous ground of appeal available." *Dorsey*, 720 F.3d at 320 (internal citation and quotation marks omitted). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith*, 528 U.S. at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Effective advocates "'winnow[] out weaker arguments on appeal'" and focus on key issues.

*Higgins v. Cain*, 720 F.3d 255, 265 n.41 (5th Cir. 2015) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).

Petitioner did not raise this ineffective assistance of appellate counsel claim in his original state habeas application; however, after the state habeas court issued its findings of fact and conclusion of law denying Petitioner's application, Petitioner supplemented his application to add this ineffective assistance of appellate counsel claim. (Dkt. #9-8, p. 5). The supplemental clerk's

record was received by and presented to the TCCA, which denied Petitioner's application without written order.

Petitioner's ineffective assistance of appellate counsel claim is unsupported by the record and without merit. As an initial matter, the record belies Petitioner's allegation that the *voir dire* transcript was not part of the record on appeal. To the contrary, the *voir dire* transcript was filed in this case and is stamped: "FILED IN 5TH COURT OF APPEALS DALLAS, TEXAS" on August 25, 2017. (Dkt. #8-2). Moreover, there is no indication that the two jurors with whom Petitioner takes issue did in fact serve on the jury. Juror number 25 and Juror number 28 indicated that they thought they could not be impartial due to the nature of the offense. (Dkt. #8-2, pp. 38-39). Both jurors were excused. (Dkt. #8-2, pp. 39, 103). Only one woman sat on the jury; a second woman was the alternate. (Dkt. #8-2, p. 105). Appellate counsel was not ineffective for failing to raise a meritless issue on appeal. *See Penson v. Ohio*, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); *Williams v. Collins*, 16 F.3d 626, 634-35 (5th Cir. 1994) (where issue is without merit, failure to raise the issue on appeal cannot satisfy prejudice prong of *Strickland*). Petitioner fails to show that there was no reasonable basis for the state court to deny relief. *See Richter*, 562 U.S. at 98. Accordingly, Claim One should be denied.

## V.  CONCLUSION

Claim Three is without merit because Petitioner fails to demonstrate that the jury charge allowed the jury to return a non-unanimous verdict or that it had a substantial and injurious effect or influence on the jury's verdict. Petitioner's Claim Four is unexhausted and procedurally barred from federal habeas corpus review; alternatively, it is without merit. Likewise, Claim One and Claim Two are without merit. Specifically, Petitioner fails to show that trial counsel and appellate

counsel rendered ineffective assistance under *Strickland*. Above all, Petitioner fails to show that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); *Richter*, 562 U.S. at 97-98; *Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997). Petitioner fails to show that there was no reasonable basis for the state court to deny relief. *See Richter*, 562 U.S. at 98. Accordingly, Petitioner's habeas petition should be denied and dismissed.

## VI.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that the Court, nonetheless, address whether Petitioner would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (holding that a district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court," noting that "[f]urther briefing and argument on the very issues the court has just ruled on would be repetitious").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a substantial showing of the denial of a constitutional right in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional

claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, it is recommended that reasonable jurists could not debate the denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is recommended that the Court find that Petitioner is not entitled to a certificate of appealability.

## VII. RECOMMENDATION

It is recommended that the above-styled petition filed under 28 U.S.C. § 2254 be denied and that the case be dismissed with prejudice. It is further recommended that a certificate of appealability be denied.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 13th day of July, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE